MORGAN, J.
On the 3d of March, 1891, the legislature passed an act entitled “An act to create and organize the eoun *74 ties of Alta and Lincoln, to locate the county seats of said counties, and to apportion the debt of Logan* county.” The first section establishes the county of Alta, composed of the territory of Alturas county as it then existed and about half of the contiguous territory of Logan. Section 2 establishes the county of Lincoln from the residue of the territory theretofore belonging to Logan. Section 3 makes Hailey, then the county seat of Alturas county, the county seat of Alta county. Section 4 makes Shoshone the county seat of Lincoln county. Section 5 authorizes the governor to appoint the county officers of the two counties thus established. Section 6 provides that all the county records, books, money, office furniture and fixtures, and all other personal property belonging to Logan county, and all real estate situate in the county of Lincoln, thus organized, before belonging to Logan county, shall become the property of Lincoln county, and that the commissioners of Lincoln county shall, within thirty days, cause all records, books, funds, and other personal property of said Logan county to be transferred to Shoshone. Section 7 provides that all public buildings, records, books, furniture, money, real estate and personal property theretofore belonging to Alturas county shall become the property of Alta county. Section 9 provides that all the indebtedness of Logan county shall be assumed and paid by Lincoln county, and that all the indebtedness of Alturas county shall be assumed and paid by Alta county. Under and by virtue of this act the commissioners of Lincoln county demanded the said books, records and personal property then in the custody of Wesley B. George, the duly elected and qualified clerk of the district court, and ex-ojjicio auditor and recorder of Logan county, which being refused, the county of Lincoln, on the seventeenth day of April, 1891, filed its petition in this court for a writ of mandate to compel said George to deliver said property to. Lincoln county. On the same day the said George filed his demurrer to said petition, and alleges that it does not state facts sufficient to constitute a cause of action. The issue thus formed raises the question as to the constitutionality of the act of March 3, 1891.
Considerable of the argument of the cause related to the question as to whether the counties, as recognized by the con *75 stitution in section 1, article 18, as they then existed, could be abolished by act of the legislature. In the view I take of the cause it is not necessary to determine this question. It will also be apparent that it is not necessary to decide the question as to whether defendant George, being duly elected in pursuance of the provisions of the constitution, is such a constitutional officer that he cannot be deprived of his office by an act of the legislature. The question that must determine this case is, Can a portion of the territory of one county be cut off and attached to another without a vote of the people, residing in the segregated portion, consenting thereto, in the manner adopted in this act? The first paragraph of section 3 of article 18 of the constitution is as follows: “No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division; provided, that this section shall not apply to the creation of new counties.” What is the evident intent of the act under consideration? What was the object to be effected? What is the result accomplished? The object was not, certainly, to change the names of the two counties. If that had been desired it could have been effected by a direct act for that purpose, as the constitution does not forbid it, and the act says nothing about changing the names of the counties of Logan and Alturas. It could not have been desired to abolish the counties of Alturas and Logan. Nothing is said in the act about abolishing the counties, and they do not seem to be abolished. The same territory that before the passage of the act constituted the counties of Alturas and Logan, under this act constitutes the counties of Alta and Lincoln. No new territory is added to them; none is taken away; but the larger half of the county of Logan is cut off, and attached to the county of Alturas, and the names of the two counties changed. There were two counties before; there are but two now. It is evident that the whole intent, and object of the act was to cut this body ■of territory from the county of Logan, and attach it to the county of Alturas. In fact, I understand the counsel did not deny that this was the sole object. But the constitution says this cannot be done except by a vote of the people. The legis *76 lature cannot do indirectly what it cannot do directly. (People v. Marshall, 12 Ill. 391; Craig v. State, 4 Pet. 410.) Says the court in the case first above mentioned: “No means can be constitutional which effect an unconstitutional object. While we would not extend the prohibitions of the constitution so as to embrace measures and objects not manifestly and clearly within the design of its framers, yet, where that is undeniably the ease, then by no means whatever should it be allowed to be evaded.” (See, also, Rock Island Co. v. Sage, 88 Ill. 589; Gotcher v. Burrows, 9 Humph. 589.) It is the duty of the court to give both the statute and the constitution such construction as will give effect to both, unless the statute is se clearly repugnant to the constitution as to admit of no other reasonable construction. (Doan v. Board, ante, p. 38, 26 Pac. 167, and cases there cited.) Suppose the court should hold that this provision of the constitution could be evaded in the manner adopted by this act, then successive legislatures could go on and sever a portion of the territory of one county and attach it to another in every part of the state, and continue the work indefinitely, without the vote of the people in any case. It will be seen that it would render this provision of the constitution of no effect whatever, as the legislature and the court would have clearly pointed out a method by which it might be evaded. I think the creation of a new county under the proviso in this section must be held to be the creation of an additional county, which the legislature may do out of any territory it may see fit, and without a vote of the people. The constitution is the fundamental law of the state; must control all branches of the government. No evasion, however specious, can be permitted. No amount of circumlocution can divide a county, and attach the part cut off to another, without compliance with section 3, by submitting the proposition to a vote of the people. We are not permitted to consider the apparent necessity of the case, nor the injustice under which any county may be laboring. Wrongs, if they exist, can only be righted by constitutional means. We can only say thus it is written in the constitution. To cut off a portion of any county, and attach the part thus detached to another county, without a vote of the people in the segregated part, would be *77 in direct violation of the clause referred to, and therefore void. The importance of the cause and the ability of the counsel engaged has induced us to examine the cases cited with more than ordinary care, but we have not been able to arrive at a different conclusion. The writ of mandate is denied, with judgment for costs against the relator, and execution may issue therefor.